UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBERT ZATOR, individually, and on behalf of all others similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act (PAGA),

Plaintiffs,

vs.

SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation, and DOES 1 to 10, inclusive,

Defendants.

CASE NO. 09cv0935-LAB (MDD)

**ORDER DISMISSING CLAIMS; AND ORDER OF REMAND**

[Docket number 34.]

Zator brought this action as an aggrieved employee under California's Private Attorneys General Act (PAGA). Sprint removed this action from the Superior Court of California for the County of San Diego on the basis of diversity jurisdiction, then moved to dismiss for lack of standing. Specifically, Sprint argues that because Zator has received everything due him, his claims must be dismissed, and he cannot represent the interests of other aggrieved employees in a PAGA action. Sprint also raises a statute of limitations defense. The Court set a briefing schedule for the motion to dismiss, but also ordered the parties to file supplemental briefing on the issue of whether, if the Court found Zator lacked standing, this action should be remanded rather than dismissed.

**I. Legal Standards**

Because standing is jurisdictional, the Court is obligated to make this determination before allowing the case to continue. *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S.Ct. 2709, 2716–17 (2008) (explaining that Article III standing is jurisdictional, and noting the court's obligation to assure itself that its jurisdiction was proper). Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the applicable standard turns on the nature of the jurisdictional challenge. *Doe v. Schachter*, 804 F. Supp. 53, 56–57 (N.D. Cal. 1992). A court deciding a motion to dismiss for lack of subject matter jurisdiction, therefore, must distinguish between a facial attack, under which the nonmoving party is entitled to the same protections it would receive in defending against a motion to dismiss for failure to state a claim, and a factual attack, under which the court considers matters outside the pleadings to resolve disputed jurisdictional facts. *Id.* at 57 (citing *Osborn v. United States*, 918 F.2d 724, 728-730 (8th Cir. 1990)).

Defendants have identified this as a "speaking motion," challenging the veracity of the jurisdictional facts underlying the complaint. When adjudicating this type of motion,

> the trial court may proceed as it never could under Rule 12(b)(6). . . . No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Schachter*, 804 F. Supp. at 57 (quoting *Thornhill Pub. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). At the same time, when — as here — a jurisdictional motion also goes to the merits, the Court employs the standard applicable for a summary judgment motion. *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987); *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1184 (citing *Thornhill*, 594 at 733).

The summary judgment standard requires the moving party to establish there are no material facts in dispute and judgment as a matter of law is appropriate. *See Roberts v.*

*Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted). The moving party is not required to negate or disprove matters on which the non-moving party will have the burden of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The moving party can meet its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Here, Zator must demonstrate by a preponderance of the evidence that he has standing to pursue an action. *See Brewer v. Lewis*, 989 F.2d 1021, 1031 (9th Cir. 1993) ("[O]n a threshold jurisdictional question such as standing, the preponderance of the evidence standard is the appropriate one.") Accordingly, Zator must "go beyond the pleading and . . . designate 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). Inadmissible evidence, such as incompetent or speculative testimony, will not suffice to meet this burden. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 385 (9th Cir. 2010).

To avoid dismissal of his claims, Zator must provide significant, probative evidence, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989), and may not rest on conclusory allegations or mere assertions. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988).

**II. Discussion**

Zator worked as a retail sales associate in Sprint's stores from July, 2006 to October, 2008. He claims Sprint failed to pay him overtime in violation of Cal. Labor Code §§ 510 and 1198; that Sprint untimely paid him upon termination in violation of Cal. Labor Code §§ 201 and 202; and that Sprint untimely paid him during his employment in violation of Cal. Labor Code § 204. His three causes of action all hinge on his allegations that he received commissions, incentives, and awards during employment for which Sprint failed to credit him, for the purpose of calculating his overtime pay rate. If he was properly paid commissions, and if no incentives or other awards were improperly excluded from his compensation, his claims fail under all three theories.

/ / /

The complaint's prayer for relief seeks civil penalties and attorney's fees under California Labor Code § 2699(f) and (g) for these violations, plus "such other and further relief as the Court may deem equitable and appropriate." It seeks PAGA statutory penalties on behalf of Zator and other aggrieved employees, but does not seek payment of any other money that might be owed to Zator. (*See also* Complaint, ¶¶ 41, 46, and 52 (detailing the relief Zator seeks for each of the three claims).)

**A. PAGA Limitations Period**

Defendants point out that Zator is bringing claims only under PAGA, and that because claims for PAGA penalties are subject to a one-year limitations period, Zator can only claim penalties for the period after March 25, 2008, one year before he filed his complaint. *See Harris v. Vector Marketing Corp.*, 2010 WL 56179 at *3 (N.D.Cal., Jan. 5, 2010) (holding that Cal Code Civ. Proc. § 340(a)'s one-year limitations period applies to PAGA claims).

Zator acknowledges this argument but simply rejects the cited authority, supplying none of his own. (Opp'n, 9:3–6.) With no further explanation, Zator argues "Defendant's cited authority does not support the proposition that Plaintiff needed to have suffered a violation within that period." (*Id.*) This bare assertion does not suffice as an argument, and is contrary to both cited precedent and other authority the Court has found. *See, e.g., Jayme v. Checksmart Financial, LLC*, 2010 WL 290033, slip op. at *2 (E.D.Cal., July 22, 2010) (holding that because the defendant had not provided evidence that employees quit or were discharged within PAGA's one-year limitations period, the defendant could not include PAGA civil penalties in calculating the total amount in controversy). Zator does, however, argue that he can show Defendant committed one violation within the statutory period, namely, its failure to include the value of a Hawaii trip as compensation.

**B. Overtime: Various Incentive Awards**

Zator alleges he earned many "incentive awards" and the value of them wasn't properly reflected on his pay statements or used in calculating his overtime. He says he won a trip, store credit cards, merchandise, and dinners with higher-level managers (Opp'n, 2:13–14) and that these should have been included as "wages" for purposes of calculating

his regular rate of pay, which is used in calculating overtime pay. (*Id.,* 8:10–10:4.) The Court will first address the smaller items, *i.e.*, merchandise, store cards, and dinners.

Under § 200(a), "wages" includes any payment in exchange for labor performed, regardless of how it is calculated. But not everything an employee receives necessarily meets the statutory definition of wages; it must be in some sense compensation for the employee's labor or performance, *see Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal. App. 4th 344, 357 (Cal. App. 2 Dist., 2005) (discussing wages as compensation), or something his labor or performance entitles him to. *Dept' of Indus. Relations v. UI Video Stores, Inc.*, 55 Cal. App. 4th 1084, 1091 (Cal. App. 1 Dist. 1997). California looks to the Fair Labor Standards Act to determine what is excludable from compensation and what constitutes the regular rate of pay for overtime purposes. *See Adoma v. University of Phoenix*, 2011 WL 892634, slip op. at *4 (E.D.Cal., March 11, 2011) (citing *Huntington Mem. Hosp. v. Superior* Court, 131 Cal. App. 4th 893, 902–03 (Cal. App. 2 Dist. 2005)). Zator agrees this is the correct approach. (Opp'n, 7:17–8:9.) This is illustrated by *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1057 (C.D.Cal., 2006), where the court looked to 29 C.F.R. § 778.217(d) to determine whether lunches provided to employees should have been included in employees' regular rate of pay. The court also considered other relevant provisions of federal law, noting that value of lunches was included in taxable income on employees' paychecks and income tax withheld accordingly. *Id*.

The evidence primarily consists of deposition testimony by both Zator and his former manager, Ryan Cooper. But no evidence has been proffered that Zator was entitled to these benefits "as part of his compensation." *See Wise v. Southern Pac. Co.* 1 Cal. 3d 600, 607 (1970). Even though he refers to these benefits as "incentive award compensation" (Opp'n, 8:20), his allegation does not suffice to show what they were, nor does it transform them into compensation.

Zator testified that top sales associates were invited to dinner with managers. (*See* Opp'n, Ex. A (Zator Depo Tr.), 75:5–76:8.) The criteria, apparently, were selected at the end of the month and the top sales associates in the selected categories were invited. This does

not appear to be compensation, because the dinners were gratuitously awarded after work was already completed, based on criteria determined and announced afterwards. In other words, while the employees might have hoped to win the awards, they weren't working towards a promised reward. *Cf. Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 522 (Cal. App. 1 Dist. 2006) ("[O]nce a bonus has been promised as part of the compensation for service, and the employee fulfills all the agreed-to conditions, the promised bonus is considered wages that must be paid.") This is consistent with 29 U.S.C.. § 207(e)(3)(a), which provides that, when determining the regular rate of compensation, an employer may exclude:

> [s]ums paid in recognition of services performed during a given period if . . . . both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly.

Zator testified that when he first started, there was a "21 Club" offering an incentive of some kind, but he didn't recall what it was. (Zator Depo Tr. at 70:6–14.) He also remembered the store manager creating "many different contests" and promising gift cards in return. (*Id*. at 70:21–71:19.) There is no evidence what the contests required or what the criteria were for winning them. Zator also testified about sales incentive contests at the store or district level, some of which were sponsored by vendors and some by the store manager. (*Id*. at 72:1–73:9.)

Incentive awards by vendors do not appear to be compensation. It is also not clear why token awards with the company name on them given purely in appreciation would constitute compensation. (*See* Zator Depo. Tr., 84:21–85:2, 85:18–86:4 (describing "knickknacks"). *See Adoma*, 2011 WL 892634, slip op. at *11 (considering whether certain tuition benefits should be disregarded as "de minimis" for purposes of calculating overtime under California law). Zator does describe receiving from Sprint a few items with possible monetary value, such a fleece jacket, backpack, and pens, but there is no evidence when these were awarded.

/ / /

While there is evidence the store manager awarded Zator gift cards, there is no evidence when this happened, how winners were selected, or how much the cards were worth. The evidence suggests this was the manager's own offer, and that neither Sprint nor successor managers knew about it. (*See* Zator Depo., 70:21–71:11 (discussing contests the store manager created).) Zator hasn't offered authority or evidence showing that this would constitute compensation, or whether it was excludable under § 207(e)(3)(a), or whether awards were earned or made during the relevant period.

Zator asked for additional discovery in order to resist summary judgment. The history of his requests is set forth in his opposition at 4:24–5:15, and shows that Magistrate Judge Anthony Battaglia bifurcated discovery, allowing an initial discovery phase sufficient to allow Zator to show he had standing. This was completed, except for a deposition related to a separate matter. None of the discovery requested relates to the gift cards, merchandise, or dinners received. The discovery request therefore has no bearing on whether these incentive awards should be construed as compensation.

In short, Zator has produced no evidence these incentive awards constituted compensation, or that they were earned or awarded during the limitations period.

**C. Hawaii Trip**

The one incentive award Zator can remember that occurred within the limitations period was a trip to Hawaii. (Opp'n, 13:5–9 ("Even so, Plaintiff has produced evidence demonstrating that he did in fact suffer a violation—namely Defendant's failure to include his May 2008 Hawaii trip in the calculation of his regular rate of pay—within that period.")) Zator argues the value of this trip should have been considered when determining his regular rate of pay, for purposes of calculating overtime owed him.

Zator presents evidence he earned the right to go on the Hawaii trip based on his sales. The trip was offered as part of a promotional or incentive program called the Pinnacle Club. (Zator Depo. Tr., 78:23—79:17.) Zator doesn't offer evidence of the nature of this trip. He says he attended in a group, and that his manager, Ryan Cooper, also went. (*Id.*, 77:7–13, 79:14–17.) Employees were eligible to go on the trip based on sales in the

previous year. (*Id*. 79:1–6; *see also* Opp'n, Ex. E (Cooper Depo. Tr.), 103:8–105:12 (testifying that Zator's Hawaii trip was awarded for sales from January through December of 2007).)

Sprint, citing evidence, argues the Hawaii trip was actually a business conference, not compensation. (*See* Mot. to Dismiss at 6:24–7:6.) Sprint points out Zator was paid his regular wages while attending, and that Zator attended required daily business meetings, and met with company executives during the four-day trip. (*Id*. (citing Cooper Decl., ¶ 8); *see also* Cooper Depo. Tr., 138:18–138:12 (testifying about mandatory preparation for and business meetings during the Hawaii trip).) If the trip was a business expense, intended primarily to benefit Sprint, it need not have been counted as compensation. *See, e.g., Adoma*, 2011 WL 892634 at *9 (discussing the exclusion of expenses incurred for the benefit of the employer from compensation) (citing 29 C.F.R. § 778.217(b)). *See also Naranjo v. Spectrum Sec. Servs., Inc.*, 172 Cal. App. 4th 654, 662 (Cal. App. 2 Dist. 2009) (discussing exclusion of the value of fringe benefits from the regular rate of pay for purposes of determining overtime compensation); 29 U.S.C. § 207(e)(2); 29 C.F.R. § 778.217(b)(3). Benefits for which an employee would normally pay, however, are includable in the regular rate of pay for purposes of calculating overtime. *See Marshall v. Valhalla Inn*, 590 F.2d 306, 308 (9th Cir. 1979) (holding that reasonable value of meals provided free to restaurant workers should be used in calculating regular rate of pay); *Wang,*, 435 F. Supp. 2d at 1057 (holding that value of lunches provided to employees should have been included in employees' regular rate of pay, because "[a]n employee normally incurs expenses in . . . buying lunch . . . .") (quoting ; 29 C.F.R. § 778.217(d).

If the Hawaii trip was primarily intended to benefit Sprint, it therefore need not have been included in Zator's regular rate of pay. If, however, it primarily benefitted Zator and only benefitted Sprint incidentally if at all, it should have been included. *See* 29 C.F.R. § 778.217(a) (providing that payments made to employees for expenses incurred for the convenience of the employer are not normally to be included in the employee's regular rate

/ / /

of pay) and (b)(3) (giving, as an illustration of excluded expenses, travel expenses incurred while on the employer's business).

The only evidence this trip should be characterized as compensation is that it was part of an incentive program, that the winners had the option of taking a cash bonus instead of going on the trip, and that it involved travel to Hawaii, a popular tourist destination. The only evidence in support of the cash bonus option comes from Zator's own testimony, which the Court will accept as true. (*See* Zator Decl., ¶ 10 ("Based on my understanding of the Pinnacle Club program's rules, it is my understanding that those employees who were eligible to receive a trip could receive monetary compensation in lieu of the trip.") On the other hand, it is undisputed Zator went on the trip and didn't get a cash bonus, that he was required to go as part of a group of Sprint employees, and that he attended mandatory training sessions each day. There is no evidence anyone took or tried to take the cash bonus, and no evidence whether people were encouraged to take the trip rather than the bonus. The evidence does not show when the winners were determined and notified, but for purposes of this motion the Court will assume the relevant dates for entitlement to the trip could have occurred during the limitations period and are not time-barred.

Looking at all the evidence, it is clear the trip had a business purpose, and Zator was traveling on Sprint's business. He attended with a group of Sprint employees, was paid his regular wages, met with Sprint executives, and was required to attend daily business meetings. *See Townsend Inds., Inc. v. United States*, 342 F.3d 890 (8th Cir. 2003) (considering various factors in determining whether fishing trips with employees were to be considered excludable business expenses). *Cf. Rudolph v. United States*, 291 F.2d 841 (5th Cir. 1961) (holding that trip to New York was compensation for services, where salesman who sold a quota of insurance received a five-day trip to New York with his wife, with one morning devoted to business meetings).

That attendees were chosen by merit competition or that this was obviously a plum assignment makes no difference; it is common business practice for employers to choose favored employees to attend conferences or meetings in desirable locations. It is not clear

why Sprint gave high-performing employees the choice between a cash bonus and attendance at the Hawaii conference. Sprint might have wanted to avoid leaving high-performing employees out in the cold if they couldn't attend the conference. But in any event, Zator did not take that option. Instead, he opted for and received the opportunity to be sent to Hawaii for business training, for which Sprint paid his expenses. That the high-performing salespeople could have opted out does not control; it is the nature of the trip that the Court must primarily look to. *See Townsend*, 342 F.3d at 894 ("[W]e cannot agree . . . that the voluntary nature of the trips rendered them an undeductible business expense.")

Zator has requested additional discovery to find out more about the terms of the Pinnacle Club, but has not identified any way this would help him. The criteria for qualifying to go on the trip do not change the nature of the trip. The only type of evidence that would help Zator would be either evidence showing Sprint treated the Hawaii trip as compensation in a financial sense (*e.g.*, as taxable income to attendees) or that the trip had little or no real business purpose. If Zator was not required to attend daily business meetings in Hawaii, or if the business purpose of the trip was minimal for some other reason, Zator could have provided his own testimony as evidence of that. And Zator has access to his own pay stubs, so he could point to them as evidence the Hawaii trip was treated as taxable income to him, if that was so. *See Wang*, 435 F. Supp. 2d at 1057 (value of employer-provided lunches was "listed on employees' paychecks as taxable wages and taxes were deducted accordingly").

Because Zator has not shown how allowing him additional discovery would preclude summary judgment, the Court denies this request. *See Smith v. Washington*, 2010 WL 4323230, slip op. at *1 (9th Cir., Oct. 29, 2010) (holding grant of summary judgment was proper, where plaintiff "did not show how allowing him additional discovery would have precluded summary judgment") (citing *Margolis v. Ryan*, 140 F.3d 850, 853–54 (9th Cir. 1998)). Zator has also objected to some of Sprint's evidence, but the Court did not rely on the objected-to portions, and overrules these objections as moot.

/ / /

**D. Commissions**

Zator alleges that Sprint failed to credit him for all of his commissions. Sprint contests this, pointing Zator had access to his pay records during his employment and could check on the accuracy of commissions paid him. Sprint also points out Zator has no evidence to show the payments were inadequate or that he failed to receive any commissions owed him. Zator has not supplied the Court with any evidence to suggest his commission wages were inaccurate. Though Zator cites extensive portions of his own testimony (*see* Zator Dep. Tr. at 101:6–116:16, 217:21–224:3, Ex. A; Zator Decl. at ¶¶ 5–8), he is never able to testify to anything more than a general belief that some commissions left unpaid. Despite eleven months of discovery and Zator's deposition testimony that he routinely copied his sales receipts (Zator Depo. Tr, 220:18–221:11), he cannot identify any commission owed to him that he did not receive, nor can he approximate the amount of money he claims Sprint owes him.

Generalized, conclusory testimony that Sprint frequently failed to capture all commissions owed to Zator des not constitute "specific facts" sufficient to defeat a summary judgment motion. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)'s] provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.")

**E. Dismissal or Remand**

Because Sprint is entitled to summary judgment on all issues, the complaint must be dismissed, including PAGA claims Zator was attempting to bring on behalf of other employees.

The Court has received supplemental briefing from both parties on the issue of whether this action should be remanded or dismissed. Zator, citing *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997), urges remand. Sprint argues that if Zator's own claims are dismissed, he likewise cannot maintain any PAGA claims. While that

may be so, final disposition of this case is an issue for the state court to determine. Sprint has not cited any decisions of California state courts on the matter. The Court therefore concludes that remand is the only proper course of action.

**III. Conclusion and Order**

For these reasons, Sprint's motion for summary judgment is **GRANTED** and Zator's claims are **DISMISSED**. This action is **REMANDED** to the Superior Court of California.

**IT IS SO ORDERED**.

DATED: March 29, 2011

HONORABLE LARRY ALAN BURNS
United States District Judge